**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.


PREFERRED CONTRACTORS INSURANCE COMPANY, RRG, a Montana Limited Liability
Company;

   Plaintiff,

v.

MICHAEL HAMILTON, a Colorado resident;
CAROL BOGGIS, a Colorado resident;
NAB, LLC D/B/A BUILDSMART FORT COLLINS, a Colorado Limited Liability Company;
ANTHONY BAETTI, a Colorado resident; and
COUNTRY MUTUAL INSURANCE COMPANY, an Illinois Corporation;

   Defendants.

---

**COMPLAINT FOR DECLARATORY RELIEF**

---

   Plaintiff, Preferred Contractors Insurance Company, RRG, ("PCIC"), by and through its

attorneys, McElroy, Deutsch, Mulvaney & Carpenter, LLP, for its Complaint for Declaratory

Relief against Defendants, states and alleges as follows:

**I. NATURE OF ACTION**

   1. Pursuant to 28 U.S.C. §2201(a), §2202, and Fed. R. Civ. P. 57, PCIC seeks a

declaratory judgment that PCIC has no duty to defend or indemnify Defendant NAB, LLC d/b/a

BuildSmart Fort Collins ("NAB") in the Underlying Action (as defined herein) under certain

Commercial General Liability policies issued by PCIC, as further defined and set forth in the

Policy Section herein.

## II.  PARTIES

2.      Plaintiff PCIC is an insurance company domiciled in Montana, with a principal place of business located at 27 North 27th Street, Suite 1900, Billings, Montana, 59101.  PCIC issued certain commercial general liability insurance policies to Defendant NAB, which are the subject of this Complaint.

3.      Defendant Michael Hamilton is a Colorado resident.

4.      Defendant Carol Boggis is a Colorado resident.

5.      Defendant NAB is a Colorado limited liability company with its principal place of business located at 1414 Catalpa Court, Fort Collins, Colorado, 80521.

6.      Defendant Anthony Baetti is a principal of NAB, and is a Colorado resident.

7.      Defendant Country Mutual Insurance Company ("Country Mutual") is an insurance company and Illinois corporation who issues commercial general liability policies in the State of Colorado, and with a principal place of business located at 1701 Towanda Avenue, P.O. Box 2100, Bloomington, Illinois, 61702-2100.

## III.  JURISDICTION AND VENUE

8.      The Court has jurisdiction over this matter under 28 U.S.C. § 1332.  There is complete diversity of citizenship between Plaintiff and Defendants in this action and the amount in controversy exceeds $75,000, exclusive of interest and costs.  Plaintiff is a citizen of the State of Montana, and all Defendants are residents of the State of Colorado except for Country Mutual, who is a citizen of Illinois.  The amount in controversy exceeds $75,000, exclusive of interest and costs, because the cost to repair the alleged defective construction to the Home in the Underlying Action (as defined herein) is $958,140.60.

9.      Pursuant to 28 U.S.C. § 1391(a), venue is proper in this Court.

## IV.  GENERAL ALLEGATIONS

10.     In or around 2014, NAB and Defendants in this action, Michael Hamilton and Carol Boggis (collectively "Owners"), entered into a contract for the construction of a single-family home located at 3016 Center Ridge Drive in Berthoud, Colorado ("Home").

11.     NAB served as the general contractor, and utilized subcontractors for all aspects of the work except for interior trim.  NAB did not have written subcontracts with its subcontractors.

12.     The Home was completed and a Certificate of Occupancy issued on January 30, 2015.

13.     In June of 2015, approximately six months after the Certificate of Occupancy was issued, Owners contacted NAB and reported that the Home was suffering from hundreds of cracks in the drywall, stucco and other components of the Home.  Upon information and belief, project engineers Gebau, Inc. ("Gebau") and CDS Engineering Corporation ("CDS") were also placed on notice of the cracking.

14.     After investigation, CDS determined that the foundation of the Home was moving due to soils-related issues, and NAB attempted cosmetic repairs during late 2015 and into early 2016.  The repairs were unsuccessful.

15.     On April 19, 2018, Owners directed a Notice of Claim pursuant to C.R.S. § 13-20-803.5, *et seq.* ("NOC"), to NAB.  *See* NOC, attached as **Exhibit 1**.  The requisite repair period pursuant to the NOC statute expired without resolution of the Owners' claims.

3

16.     Subsequently, on November 30, 2018, Owners filed their Complaint in an action styled *Michael Hamilton and Carol Boggis v. NAB, LLC d/b/a Build Smart Fort Collins, et al.*, Larimer County District Court, Case No. 2018CV31117 ("Underlying Action" throughout).  *See* Complaint, attached as **Exhibit 2**.  The Complaint names NAB, Mr. Baetti, Gebau, Paul Gallagher, P.E., CDS and Kevin F. Becker, P.E., as Defendants.

17.     Pursuant to the Complaint, the Home suffers from various defects, including:

> [E]xcessive foundation and slab movement caused by uplift of the highly expansive soils under the Home, which has caused significant resultant property damage, including, but not limited to racked doors and windows, stucco cracks, cracked foundation walls, excessive drywall cracks, uneven interior floors, and heaved flatwork.

Complaint, ¶ 22.

18.     PCIC is currently providing a defense to NAB and Mr. Baetti in the Underlying Action, subject to a reservation of rights.

19.     Country Mutual also insures NAB under Policy No. AB9004559 for the term October 9, 2014 to March 15, 2015, when the policy was canceled ("Country Mutual Policy"). Country Mutual is also defending NAB and Mr. Baetti in the Underlying Action under the Country Mutual Policy.

## V.  PCIC POLICIES

20.     PCIC issued to NAB commercial general liability policy numbers PC97717, PC97717-02, PC207816 and PC247215 for the respective terms of October 14, 2014 to October 14, 2015 ("14-15 Policy"), October 14, 2015 to October 14, 2016 ("15-16 Policy"), October 14, 2016 to October 14, 2017 ("16-17 Policy") and  October 14, 2017 to October 14, 2018 ("17-18 Policy") (sometimes collectively "PCIC Policies").  *See* 14-15 Policy, attached as **Exhibit 3**; 15-

16 Policy, attached as **Exhibit 4**; 16-17 Policy, attached as **Exhibit 5**; 17-18 Policy, attached as

**Exhibit 6**. The PCIC Policies each provide liability limits of $1 million per occurrence, a $1

million products-completed operations aggregate limit, and a $2 million general aggregate limit.

Relevant here, the PCIC Policies includes Endorsement No. 18, the Subcontractor Condition.

21.     The Insuring Agreements of the 15-16, 16-17 and 17-18 Policies are substantively

similar and read, in relevant part:

**SECTION I - COVERAGES**
**COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1.     **Insuring Agreement**

   **a.**     We will pay those sums that the insured becomes legally obligated to pay as "damages"
   because of "bodily injury" or "property damage" to which this insurance applies. We will
   have the right and duty to defend the insured against any "suit" seeking "damages" to
   which this insurance applies. However, we will have no duty to defend any insured
   against any "suit" seeking damages for "bodily injury" or "property damage" to which
   this insurance does not apply. We may, at our discretion, investigate any "occurrence"
   and settle any claim or "suit" that may result. But:

      **(1)**     The amount we will pay for "damages" is limited as described in Section III -
      Limits of Insurance; and

      **(2)**     Our right and duty to defend ends when we have used up the applicable limit of
      insurance in the payment of "damages," under Coverage A or B or medical
      expenses under Coverage C, "claim expenses," or both.

      **(3)**     It is expressly understood and agreed that "claim expenses" are included within
      and are not in addition to the Limits of Liability set forth in the Declarations.

   **b.**     This insurance applies to "bodily injury" and "property damage" only if:

      **(1)**     The "bodily injury" or "property damage" is caused by an "occurrence" that first
      takes place or begins during the "policy period". "You" and "we" agree that the
      determination of when an occurrence first occurs or begins during the policy
      period shall be made based
      on the date that the conduct, act or omission, process, condition or circumstance
      alleged to be the cause of the "bodily injury" or "property damage" first began,
      was first
      committed, or was first set in motion;

5

    **(2)**    The "bodily injury" or "property damage" first occurs or begins during the "policy period." "Bodily injury" or "property damage" first occurs or begins on the date when the "bodily injury" or "property damage" appears and is identified;

    **(3)**    Prior to the "policy period," no insured listed under Paragraph 1. of Section II - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "occurrence," "bodily injury" or "property damage" had occurred, in whole or in part.  If such a listed insured or authorized "employee" knew, prior to the "policy period," that the "occurrence," "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the "policy period" will be deemed to have been known prior to the "policy period"; and

    **(4)**    All other insurance available to the insured(s) has been exhausted, regardless of any other insurance condition or clause in such insurance and regardless of whether such other insurance is stated to be primary, excess or contingent, unless such other insurance specifically is written to apply in excess of this particular policy.

22.    Common Policy Exclusion h., the Prior Knowledge Exclusion, in the 15-16, 16-17 and 17-18 Policies excludes coverage for:

"Bodily injury," "property damage" or "personal and advertising injury" arising out of, or in any way related to any facts, incidents or circumstances of which the insured had knowledge prior to the inception date of this policy and which might reasonably be expected to result in a claim or "suit" being made against the insured.

23.    Coverage A. Exclusion x., Prior Completed Work in the 15-16, 16-17 and 17-18 Policies exclude coverage for:

    **x.**  **Prior Completed Work**
    "Bodily injury" or "property damage" arising out of, resulting from, caused by, contributed to, or in any way related, in whole or in part, to "your work" that was completed by the insured prior to the inception date of the policy set forth in the Declarations.

    "Your work" shall be deemed completed at the earliest of the following times:
    (1)  When all of the work on that particular part of "your work" where "bodily injury" or "property damage" arises has been completed;
    (2)  When all of the work called for in your contract, invoice or proposal has been completed;
    (3)  When all of the work to be done at the site has been completed if your contract, invoice or proposal calls for work at more than one job site.

(4)  When that part of "your work" done at a job site has been put to its intended use by any person or organization including another contractor or subcontractor working on the same project.

(5)  When "your work" at a job site or project ends because your contract was terminated or you were directed to cease "your work" by anyone for whom "your work" was being performed.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be deemed complete.

24.  The Insuring Agreement of the 14-15 Policy reads as follows:

**SECTION I - COVERAGES**
**COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.**   **Insuring Agreement**

**a.**   We will pay those sums that the insured becomes legally obligated to pay as "damages" because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking "damages" to which this insurance applies.  However, we will have no duty to defend any insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.  But:

(1)  The amount we will pay for "damages" is limited as described in Section III - Limits of Insurance; and

(2)  Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of "damages," under Coverage A or B or medical expenses under Coverage C, "claim expenses," or both.

(3)  It is expressly understood and agreed that "claim expenses" are included within and are not in addition to the Limits of Liability set forth in the Declarations.

**b.**   This insurance applies to "bodily injury" and "property damage" only if:

(1)  The "bodily injury" or "property damage" is caused by an "occurrence" that first takes place or begins during the "policy period". "You" and "we" agree that the determination of when an occurrence first occurs or begins during the policy period shall be made based on the date that the conduct, act or omission, process, condition or circumstance alleged to be the cause of the "bodily injury" or "property damage" first began, was first committed, or was first set in motion;

(2)  The "bodily injury" or "property damage" first occurs or begins during the "policy period." "Bodily injury" or "property damage" first occurs or begins on

7

the date when the "bodily injury" or "property damage" appears and is identified by the insured or another person;

    **(3)**    Prior to the "policy period," no insured listed under Paragraph 1. of Section II - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "occurrence," "bodily injury" or "property damage" had occurred, in whole or in part.  If such a listed insured or authorized "employee" knew, prior to the "policy period," that the "occurrence," "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the "policy period" will be deemed to have been known prior to the "policy period"; and

    **(4)**    All other insurance available to the insured(s) has been exhausted, regardless of any other insurance condition or clause in such insurance and regardless of whether such other insurance is stated to be primary, excess or contingent, unless such other insurance specifically is written to apply in excess of this particular policy.

25.    In order to trigger the PCIC Policies' Insuring Agreements, there must be allegations of "property damage" that first took place during the respective Policy periods. "Property damage" is defined in the PCIC Policies to mean:

    a.    physical injury to tangible property that first occurs or begins during the "policy period"; or

    b.    loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

26.    The PCIC Policies define an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

27.    Relevant here, the PCIC Policies include the following Coverage A. Exclusions, which read in pertinent part:

**2.**    **Exclusions**
This insurance does not apply to:

    g.    **Damage to Property**
"Property damage" to:
    (5)    That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6)   That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you. Paragraph (6) of this exclusion does not apply to "property damage" included in the "products completed operations hazard".

h.   **Damage To Your Product**
"Property damage" to "your product" arising out of it or any part of it.

i.   **Damage To Your Work**
"Property damage" to "your work" arising out of it or any part of it and included in the "products completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

\*     \*     \*

m.   **Subsidence of Land**
"Bodily injury" or "property damage" arising out of, resulting from, caused by, contributed to by, or in any way related, in whole or in part, the subsidence of land or soil, including, but not limited to, earthquake, landslide, mine subsidence, mud flow, or sinking, rising, settling, cracking, shifting, expansion or contraction of the earth or soil, or any other movement of earth.  Any such subsidence of land or soil is excluded regardless of any other cause or event (natural or man-made) contributing or concurring, in any sequence causing loss.

\*     \*     \*

o.   **Deleterious Substances**
"Bodily injury" or "property damage" arising out of, resulting from, caused by, contributed to by, or in any way related to, in whole or in part, the discharge, dispersal, release, escape, disposal, existence, presence, handling, ingestion, inhalation, installation, sale, distribution, encapsulation, storage, transportation, use or removal of, or exposure to any "deleterious substance."

(1)   For purposes of this exclusion, "deleterious substance" shall be defined to include:

(i)   Mold. Mold means any permanent or transient fungus, mold, mildew or mycotoxin, or any of the spores, scents or by-products resulting therefrom that
exist, emanate from or move anywhere indoors or outdoors, regardless of whether they are proved to cause disease, injury or damage;

\* \* \*

9

(2)    This exclusion applies:

    (i)    Equally to any "bodily injury" or "property damage" arising out of exposure to any "deleterious substance," regardless of the name by which it is manufactured, sold, distributed or known;

    (ii)    Equally to any "bodily injury" or "property damage" involving air, land, structure, building, outdoors, indoors, confined or enclosed space, or the air within any of them, watercourse or water, including surface and underground water;

    (iii)    Regardless of whether any alleged defects or claimed negligence in design, construction or materials, or any other conduct or misconduct, may have or is claimed to have precipitated, caused in whole or in part, or acted jointly, concurrently or in any sequence with any "deleterious substance" in any form whatsoever in causing or contributing to "bodily injury" or "property damage";

(3)    To any loss, cost or expense arising out of any:

    (i)    Request, demand, order or requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of any "deleterious substances" in any form whatsoever; or

    (ii)    Claim or "suit" seeking, involving or arising from any testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of any "deleterious substances" in any form whatsoever.

(4)    Regardless of whether coverage is also excluded under Section II Common Policy Exclusions, Paragraph (b) Pollution, or any other provision or exclusion of the policy.

*   *   *

p.    **Professional Services**
Any claim for "bodily injury" or "property damage" arising out of, resulting from, caused by, contributed to, or in any way related to, in whole or in part, the performance of or failure to perform professional services of an architect, engineer, surveyor or other similar professional whether employed, hired or   contracted   to perform work by any insured or performed by any insured or anyone acting on any insured's behalf.

*   *   *

aj.    **Independent Contractors/Subcontractors**
"Bodily injury" or "property damage" arising out of, resulting from, caused by, contributed to or in any way related, in whole or in part, to the acts or omissions of any independent contractor(s) or subcontractor(s) whether or not hired by the insured.

This exclusion includes but is not limited to any acts or omissions of any insured in the hiring,   retention, training, instruction or supervision of any independent contractor(s) or subcontractor(s).

It is a condition of this exclusion, that any claim for "bodily injury" or "property damage" arising out of, resulting from, caused by, contributed to or is any way related, in whole or in part, by work or operations performed by the Named Insured or any insured, to fix, repair, or correct work initially performed by an independent contractor or subcontractor, shall have a maximum occurrence limit of $25,000.

28.     The PCIC Policies contain the following Common Policy Exclusions, which exclude coverage for:

k.     **Contractual Liability**
"Bodily injury," "property damage" or "personal or advertising injury" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.

l.     **Attorney Fees and Expert Fees of Others**
Any claim, "suit", demand, request, or award against any insured, comprised, in whole or in part, of any attorney fees and costs, expert fees and costs, sanctions or any other cost or expense incurred by any other party to any claim or "suit", including any other insured under this policy. This exclusion applies regardless of whether any of the expenses or costs described above are/were awarded in a suit as damages or costs.
This exclusion does not apply to our obligations under an insured contract.

29.     The PCIC Policies includes the following Conditions:

4.     **Other Insurance**
a.   This insurance shall be in excess of any other valid and collectible insurance available to the insured whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written specifically to apply in excess of this particular policy.  This insurance will apply only after all other insurance available to the insured has been exhausted regardless of any other insurance clause or condition of such insurance.  If there is no coverage for a claim or "suit" for any insured under other insurance, there is no coverage under this policy for any insured.  If there is other insurance available to any insured, "we" will have no duty to defend any insured.

b.   When any insured is added as an additional insured under any other policy, this insurance shall apply to that insured as excess insurance only above such other insurance in accordance with Paragraph 1, above.

c.   When this insurance is excess over any other insurance, we will have no duty to defend the insured against any claim or "suit".  This Policy affords a defense to an insured only when a loss or claim seeks damages to which no underlying insurance or other insurance for an insured applies.

*     *     *

11

21. **Right of Reimbursement of Defense Costs**
We have the right of reimbursement of all defense costs we incur in defending any insured in a "suit" for which there is no coverage under this policy, regardless of whether the "suit" included allegations or damages that may have been potentially covered at the time of tender to us or not. This right of reimbursement extends to all defense costs paid by us for defense of causes of action and/or damages for which there is no coverage under this policy. Our right of reimbursement of such defense costs shall include prejudgment interest incurred by us from the date the defense costs were paid by us.

22. **Right of Reimbursement of Settlement Payments**
We have the right of reimbursement of all settlement payments made by us in settlement of claims or "suits" for which there is no coverage under this policy. This right of reimbursement extends to all settlement payments paid by us as to causes of action and/or damages for which there is no coverage under this policy. Our right of reimbursement of such settlement costs shall include prejudgment interest incurred by us from the date the settlement costs were paid by us.


30. The PCIC Policies all include a version of Endorsement No. 18 – Subcontractor

Condition, which reads as follows in the 14-15 Policy:

This endorsement modifies coverage provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART

Coverage only applies to liability arising out of work performed for you by your "adequately insured" contractors or subcontractors and only if the contractors or subcontractors:

(1)     Provide hold harmless agreements indemnifying against all losses for the work performed by or on behalf of the contractors or subcontractors;

(2)     Name you as an Additional Insured on all contractors or subcontractors Commercial General Liability policies; and

(3)     Has coverage that is equal to or greater than provided by this **Policy,** with limits of at least $1,000,000.00 (One Million Dollars) per occurrence.

You will obtain and maintain Certificates of Insurance from all contractors or subcontractors you hire providing evidence of insurance, including Commercial General Liability, Workers' Compensation and Employer's Liability.

The following exclusion is added to Paragraph 2. Exclusions of SECTION 1 – COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY and COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY:

We will not extend any defense and/or coverage under this policy for work performed by those contractors or subcontractors you hire who are not "adequately insured".

The following definition is added to the DEFINITIONS Section:

12

"Adequately insured" means that the contractors or subcontractors that perform operations for you maintain Commercial General Liability insurance in force with limits of insurance for their operations that are equal to or greater than the limits of insurance shown in the Declarations of this policy, including operations performed for them by others and that policies of such contractors and subcontractors do not exclude the work being performed for you. In the event that your contractors or subcontractors have a policy that does not cover them for the work they are doing for you, your policy will not cover them as well.

Except as set forth above, all of the terms, conditions and exclusions of this policy apply and remain in effect.

31.     Exclusion ae. on the PCIC Policies excludes coverage for:

ae.     **Material Misrepresentation**
This policy does not apply to any claim reported under this policy that would not otherwise be covered, but for a "material misrepresentation" in the application for insurance by the insured.  This exclusion shall apply if the concealed or misrepresented information would have had an effect on the terms, conditions, exclusions, endorsements, premium, overall risk, or issuance of the policy, had it been known to the Risk Retention Group at the time the insured initially applies for or renewed this policy.

Materiality is to be determined not by the event, but solely by the probable and reasonable influence of the facts upon the party to whom the communication is due, in forming his estimate of the disadvantages of the proposed contract, or in making his inquiries.

32.     Similarly, Condition 6. in the PCIC Policies reads as follows:

6.     **Representations and Warranties**
a.  The statements in the application are your representations and warranties, that they shall be deemed material and that this policy is issued in reliance upon the truth of such representations and warranties and that this policy embodies all agreements existing between you and the Company, or any of its agents, relating to this insurance.

b.  The application made to us for insurance, including all statements, representations and warranties contained therein, is incorporated herein and made part of the policy.

c.  If, prior to the inception date, any insured has knowledge of any fact, circumstance or situation reasonably indicating the probability of a claim or action for which coverage may be afforded by this insurance, any claim or "suit" subsequently emanating therefrom shall be excluded from coverage under this policy.

33.     The PCIC Policies define "your work" as:

"Your work":
a.          means:

13

        (1)      work or operations performed by you or on your behalf; and

        (2)      materials, parts or equipment furnished in connection with such work or operations.

    a.      includes:

        (1)      warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

        (2)      the providing of or failure to provide warnings or instructions.

34.      The PCIC Policies define "products-completed operations hazard" as:

"Products-completed operations hazard"

    a.      includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

        (1)      products that are still in your physical possession; or

        (2)      work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

            (i)      when all of the work called for in your contract has been completed;.

            (ii)      when all of the work to be done at the job site has been completed if your contract calls for work at more than one job site;

            (iii)     when that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

    Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

    a.   Does not include "bodily injury" or "property damage" arising out of:

        (1)      the transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

        (2)      the existence of tools, uninstalled equipment or abandoned or used materials; or

        (3)      products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

## VI.  CLAIMS FOR RELIEF

## DECLARATORY JUDGMENT – COUNT ONE

**(Insuring Agreements / Common Policy Exclusion h. – Prior Knowledge)**

35.     PCIC incorporates by reference the allegations contained in all preceding paragraphs as if set forth fully herein.

36.     The PCIC Policies only provide coverage for damages because of "property damage" that first occurs within the terms of each respective Policy and is caused by an "occurrence."

37.     The Complaint in the Underlying Action includes numerous allegations of non-compliant and/or improper work at the Home.  Such allegations do not include any "physical injury to tangible property," and such allegations are not "property damage" under the PCIC Policies.

38.     In June of 2015, approximately six months after the Certificate of Occupancy was issued, Plaintiffs contacted NAB and reported that the Home was suffering from hundreds of cracks in the drywall, stucco and other components of the Home.

39.     The Insuring Agreements of the PCIC Policies require that the alleged "property damage" first take place during the terms of the PCIC Policies, and that such alleged "property damage" is deemed to first occur when such damages are identified by anyone.  As the alleged damages were identified and began prior to the inception of the 15-16, 16-17 and 17-18 PCIC Policies (which incepted on October 24, 2015), the Insuring Agreements of the 15-16, 16-17 and 17-18 PCIC Policies are not triggered, and there is no coverage available for NAB under the 15-16, 16-17 and 17-18 PCIC Policies.

40.     Similarly, the 15-16, 16-17 and 17-18 PCIC Policies all include Common Policy Exclusion h. – Prior Knowledge, which excludes coverage all coverage for "property damage"

15

for which the insured knew of prior to the inception of the policy at issue.  Again, NAB knew of the alleged damages at the Home in June of 2015.

41.     Pursuant to the Insuring Agreements of the 15-16, 16-17 and 17-18 PCIC Policies and Common Policy Exclusion h. – Prior Knowledge, PCIC is entitled to a declaration that PCIC has no duty to defend and/or indemnify NAB under the 15-16, 16-17 and 17-18 PCIC Policies because any "property damage", if any, first occurred prior to the 15-16, 16-17 and 17-18 Policy periods and prior to these Policy periods NAB knew that the alleged "property damage" had occurred.

42.     Pursuant to the Insuring Agreements of all PCIC Policies, PCIC is entitled to a declaration that PCIC has no duty to indemnify NAB under the PCIC Policies for any damages that are not because of "property damage" caused by an "occurrence."

### DECLARATORY JUDGMENT – COUNT TWO
**(Coverage A. Exclusion x. – Prior Completed Work)**

43.      PCIC incorporates by reference the allegations contained in all preceding paragraphs as if set forth fully herein.

44.     The 15-16, 16-17 and 17-18 PCIC Policies include Coverage A. Exclusion x. – Prior Completed Work, which excludes coverage for "property damage" arising out of, resulting from, caused by, contributed to, or in any way related, in whole or in part, to NAB's work that was completed by NAB prior to the inception date of any of the PCIC Policies.

45.     Here, NAB's work was finished in January of 2015, as evidenced by the Certificate of Occupancy issued for the Home on January 30, 2015.

46.     Pursuant to Coverage A. Exclusion x. – Prior Completed Work, PCIC is entitled to a declaration that PCIC has no duty to defend or indemnify NAB under the 15-16, 16-17 and

16

17-18 PCIC Policies because NAB's work at the Home was finished prior to the inception of these PCIC Policies.

### DECLARATORY JUDGMENT – COUNT THREE
### (Coverage A. Exclusion m. – Subsidence)

47.     PCIC incorporates by reference the allegations contained in all preceding paragraphs as if set forth fully herein.

48.     All PCIC Policies include Coverage A. Exclusion m. – Subsidence, which excludes all coverage under the PCIC Policies for any and all alleged "property damage" as a result of any soils-related movement.

49.     Here, the Complaint in the Underlying Action is rife with allegations that all damages are related to soils movement, to wit:

> Various elements of the Home suffer from defects, deficiencies, or damage, including, but not limited to, the following excessive foundation and slab movement caused by the uplift of highly expansive soils under the Home, which has caused significant resultant property damage, including but not limited to racked doors and windows, stucco cracks, cracked foundation walls, excessive drywall cracks, uneven interior floors, and heaved flatwork.

Complaint, ¶22.

50.     Further, expert reporting in the Underlying Action indicates that all alleged damages to the Home are the result of soils movement.

51.     Pursuant to Coverage A. Exclusion m. – Subsidence, PCIC is entitled to a declaration that PCIC has no duty to defend or indemnify NAB under the PCIC Policies because the alleged damages to the Home relate to soils movement.

### DECLARATORY JUDGMENT – COUNT FOUR
### (Endorsement No. 18 – Subcontractor Condition)

17

52.     PCIC incorporates by reference the allegations contained in all preceding paragraphs as if set forth fully herein.

53.     The PCIC Policies include Endorsement No. 18 – Subcontractor Condition. Pursuant to this clear condition precedent to coverage for any liability arising out of work performed by any subcontractor of NAB, NAB was required to obtain written subcontracts which included indemnification agreements in favor of NAB, additional insured coverage (for NAB) and adequate policy limits from each subcontractor that performed work on the Home on behalf of NAB.

54.     Upon information and belief, NAB utilized subcontractors for all work on the Home except for interior trim, which NAB performed itself.

55.     NAB did not have written subcontract agreements with any subcontractor, and thus did not meet the condition precedent to coverage under the PCIC Policies pursuant to Endorsement No. 18 – Subcontractor Condition.

56.     PCIC is entitled to a declaration that it has no duty to defend and/or indemnify NAB under the PCIC Policies as to any and all work performed by subcontractors because the clear conditions precedent to coverage under Endorsement No. 18 – Subcontractor Condition were not met.

## DECLARATORY JUDGMENT – COUNT FIVE
**(Coverage A. Exclusion ae. – Material Misrepresentation / Condition: Representations and Warranties)**

57.     PCIC incorporates by reference the allegations contained in all preceding paragraphs as if set forth fully herein.

58.     Pursuant to the terms and provisions in Coverage A. Exclusion ae. – the Material Misrepresentation Exclusion and the Representations and Warranties Condition, any misinformation on the application of insurance by NAB to PCIC impacts and/or negates coverage for NAB regarding the Underlying Action.

59.     In its application for insurance, which is incorporated by reference into the PCIC Policies, NAB specifically stated that NAB has written subcontracts with each and every subcontractor, and that such subcontracts include indemnity provisions in favor of NAB and require the subcontractors to name NAB as an additional insured on all subcontractors' liability policies.

60.     NAB did not obtain any written subcontracts with its subcontractors relative to the Home, nor did NAB obtain the required indemnity and additional insured provisions in NAB's favor from NAB's subcontractors.

61.     Accordingly and pursuant to the terms and provisions in the Material Misrepresentation Exclusion and the Representations and Warranties Condition, PCIC is entitled to a declaration that PCIC has no duty to defend or indemnify NAB under the PCIC Policies as a result of such misrepresentations.

## DECLARATORY JUDGMENT – COUNT SIX
### (Other Insurance)

62.     PCIC incorporates by reference the allegations contained in all preceding paragraphs as if set forth fully herein.

63.     The PCIC Policies include Condition 4., Other Insurance, which states that the PCIC Policies are excess to any and all available other insurance to NAB, including the Country Mutual Policy.

64.     Similarly, the Insuring Agreements of the PCIC Policies state that the coverage available under the PCIC Policies, if any, only applies after all other insurance available to NAB has been exhausted.

65.     Here, Country Mutual is also providing a defense to NAB under the Country Mutual Policy, and thus other insurance is available to NAB (other than under the PCIC Policies).

66.     Accordingly, PCIC is entitled to a declaration that the PCIC Policies provide excess only coverage to the coverage provided to NAB by Country Mutual under the Country Mutual Policy.

**DECLARATORY JUDGMENT – COUNT SEVEN**
**(Coverage A. Exclusions g.(5) and g.(6) – Damage to Property)**

67.     PCIC incorporates by reference the allegations contained in all preceding paragraphs as if set forth fully herein.

68.     The PCIC Policies include Coverage A. Exclusions g.(5) and g.(6) – Damage to Property, set forth above, which exclude any damages for "property damage" that occurs during the course of construction, prior to completion of the Home.

69.     The Complaint in the Underlying Action is silent as to the timing of the alleged damages with regard to when NAB and/or its subcontractors were working on the Home, although upon information and belief some of the alleged damages may have occurred during the course of construction.

70.     Pursuant to Coverage A. Exclusions g.(5) and g.(6) – Damage to Property on the PCIC Policies, PCIC is entitled to a declaration that these exclusions bar coverage for any damages assessed against NAB for "property damage" because some or all such "property damage" occurred during the course of construction.

### DECLARATORY JUDGMENT – COUNT EIGHT
### (Coverage A. Exclusion i. – Damage to Your Work)

71.      PCIC incorporates by reference the allegations contained in all preceding paragraphs as if set forth fully herein.

72.     The Policies include Coverage A. Exclusion i. – Damage to Your Work.  This exclusion excludes coverage for "property damage" to completed operations that is part of or arises out of NAB's own work.

73.     Here, PCIC has been informed that NAB self-performed certain aspects of the work at the Home, including but not limited to all interior trim.

74.     Pursuant to Coverage A. Exclusions i. – Damage to Your Work, PCIC is entitled to a declaration that to the extent any damages are assessed against NAB for "property damage" relative to the work of NAB itself, such damages are not covered under the PCIC Policies.

### DECLARATORY JUDGMENT – COUNT NINE
### (Coverage A. Exclusion o. – Deleterious Substance)

75.     PCIC incorporates by reference the allegations contained in all preceding paragraphs as if set forth fully herein.

76.     The PCIC Policies include Coverage A. Exclusion o. – Deleterious Substance, which excludes coverage for any "property damage" related to mold (among other things).

77.      Here, the Complaint and other available information/reporting includes numerous allegations of alleged cracking and movement of components of the Home, which may have led to water intrusion and the growth of mold or other "deleterious substance" as defined in the PCIC Policies.

78.      Pursuant to the Coverage A. Exclusion o. – Deleterious Substance, PCIC is entitled to a declaration that any damages awarded against NAB for damages related to mold are excluded under the PCIC Policies.

## DECLARATORY JUDGMENT – COUNT TEN
### (Coverage A. Exclusion p. – Professional Services)

79.      PCIC incorporates by reference the allegations contained in all preceding paragraphs as if set forth fully herein.

80.      The PCIC Policies include Coverage A. Exclusion p. – Professional Services, which excludes coverage for and claim, for:

> "[P]roperty damage" arising out of, resulting from, caused by, contributed to, or in any way related to, in whole or in part, the performance of or failure to perform professional services of an architect, engineer, surveyor or other similar professional whether employed, hired or   contracted   to perform work by any insured or performed by any insured or anyone acting on any insured's behalf.

81.      Here, both the structural and geotechnical engineers for the Home, Gebau and CDS, are defendants in the Underlying Action, as both are alleged to have performed negligent work with regard to engineering the Home's foundation on soils prone to movement.

82.      Thus, to the extent NAB is held liable for the work of either Gebau or CDS, PCIC is entitled to a declaration that Coverage A. Exclusion p. – Professional Services, excludes coverage for NAB under the PCIC Policies.

## DECLARATORY JUDGMENT – COUNT ELEVEN

**(Common Exclusion k. – Contractual Liability)**

83.     PCIC incorporates by reference the allegations contained in all preceding paragraphs as if set forth fully herein.

84.     The PCIC Policies include Common Exclusion k. – Contractual Liability, which excludes coverage for NAB where NAB is obligated to pay damages to a third-party by way of assumption of liability in such a contract.

85.     The Complaint in the Underlying Action alleges a cause of action for Breach of Contract against NAB.

86.     Pursuant to Contractual Liability exclusion, PCIC is entitled to a declaration that any damages awarded pursuant to a breach of any contractual obligation for "property damage" NAB is alleged to owe any third-party, including Owners and any other third-party, is excluded under the PCIC Policies.

**DECLARATORY JUDGMENT – COUNT TWELVE**
**(Common Exclusion l. – Attorney's Fees and Expert Fees of Others)**

87.     PCIC incorporates by reference the allegations contained in all preceding paragraphs as if set forth fully herein.

88.     The PCIC Policies include Common Exclusion l. – Attorney's Fees and Expert Fees of Others.  Pursuant to this exclusion, any claim, suit, demand, request or award of attorneys' fees, expert fees, etc., of others are not covered under the PCIC Policies.

89.     The Complaint in the Underlying Action requests attorney's fees and expert fees as part of the demand to NAB from Owners.

90.     Pursuant to the exclusion for Attorney's Fees and Expert Fees of Others, PCIC is entitled to a declaration that any award against NAB for attorney's fees and/or any other fees and costs as set forth in Common Exclusion l. are not covered under the PCIC Policies.

## DECLARATORY JUDGMENT – COUNT THIRTEEN
### (Conditions 21 and 22 - Right of Reimbursement of Defense Costs and Right of Reimbursement of Settlement Payments)

91.     PCIC incorporates by reference the allegations contained in all preceding paragraphs as if set forth fully herein.

92.     Sections V. 21 and 22 of the PCIC Policies, labeled Right of Reimbursement of Defense Costs and Right of Reimbursement of Settlement Payments, respectively, provide PCIC the explicit right of reimbursement for any defense costs and/or indemnity payments made by PCIC for claims where there is no coverage under the PCIC Policies.

93.     Based on the allegations in the Complaint in the Underlying Action and other facts and information provided to PCIC, there is no coverage available under the PCIC Policies for NAB regarding the allegations made against NAB in the Underlying Action.

94.     Accordingly, PCIC is entitled to a declaration that NAB and/or Country Mutual must reimburse PCIC for any and all defense fees and costs and/or indemnity payments made with regards to non-covered damages.

## VII.  RELIEF REQUESTED

WHEREFORE, PCIC prays for the following relief:

1.     Declaratory Judgment – Count One (Insuring Agreements / Common Policy Exclusion h. – Prior Knowledge): a declaration that PCIC has no duty to defend and/or indemnify NAB under the 15-16, 16-17 and 17-18 PCIC Policies because any "property

damage", if any, first occurred prior to the 15-16, 16-17 and 17-18 Policy periods and prior to these Policy periods NAB knew that the alleged "property damage" had occurred; and that Pursuant to the Insuring Agreements of all PCIC Policies, PCIC is entitled to a declaration that PCIC has no duty to indemnify NAB under the PCIC Policies for any damages that are not because of "property damage" caused by an "occurrence";

2.      Declaratory Judgment – Count Two (Coverage A. Exclusion x. – Prior Completed Work): a declaration that PCIC has no duty to defend or indemnify NAB under the 15-16, 16-17 and 17-18 PCIC Policies because NAB's work at the Home was finished prior to the inception of these PCIC Policies;

3.      Declaratory Judgment – Count Three (Coverage A. Exclusion m. – Subsidence): a declaration that PCIC has no duty to defend or indemnify NAB under the PCIC Policies because the alleged damages to the Home relate to soils movement;

4.      Declaratory Judgment – Count Four (Endorsement No. 18 – Subcontractor Condition): a declaration that it has no duty to defend and/or indemnify NAB under the PCIC Policies as to any and all work performed by subcontractors because the clear conditions precedent to coverage under Endorsement No. 18 – Subcontractor Condition were not met;

5.      Declaratory Judgment – Count Five (Coverage A. Exclusion ae. – Material Misrepresentation / Condition: Representations and Warranties): a declaration that PCIC has no duty to defend or indemnify NAB under the PCIC Policies as a result of misrepresentations in the applications for insurance;

6.      Declaratory Judgment – Count Six (Other Insurance): a declaration that the PCIC Policies provide excess only coverage to the coverage provided to NAB by Country Mutual under the Country Mutual Policy;

7.      Declaratory Judgment – Count Seven (Coverage A. Exclusions g.(5) and g.(6) – Damage to Property): a declaration that Exclusions g.(5) and g.(6) exclude coverage for any damages assessed against NAB for "property damage" because some or all such "property damage" occurred during the course of construction;

8.      Declaratory Judgment – Count Eight (Coverage A. Exclusion i. – Damage to Your Work): a declaration that to the extent any damages are assessed against NAB for "property damage" relative to the work of NAB itself, such damages are not covered under the PCIC Policies;

9.      Declaratory Judgment – Count Nine (Coverage A. Exclusion o. – Deleterious Substance): a declaration that any damages awarded against NAB for damages related to mold are excluded under the PCIC Policies;

10.     Declaratory Judgment – Count Ten (Coverage A. Exclusion p. – Professional Services): a declaration that to the extent NAB is held liable for the work of either Gebau or CDS, that Coverage A. Exclusion p. – Professional Services, excludes coverage for NAB under the PCIC Policies;

11.     Declaratory Judgment – Count Eleven (Common Exclusion k. – Contractual Liability): a declaration that any damages awarded pursuant to a breach of any contractual obligation for "property damage" NAB is alleged to owe any third-party, including Owners and any other third-party, is excluded under the PCIC Policies;

26

12.     Declaratory Judgment – Count Twelve (Common Exclusion l. – Attorney's Fees and Expert Fees of Others): a declaration that any award against NAB for attorney's fees and/or any other fees and costs as set forth in the exclusion are not covered under the PCIC Policies;

13.     Declaratory Judgment – Count Thirteen (Conditions 21 and 22 – Right of Reimbursement of Defense Costs and Right of Reimbursement of Settlement Payments): a declaration that NAB and/or Country Mutual must reimburse PCIC for any and all defense fees and costs and/or indemnity payments made with regards to non-covered damages;

14.     For attorneys' fees and costs as allowed by law; and

15.     For such other and further relief deemed just and proper.

Respectfully submitted this 16th day of February, 2021.

By: _/s/ Todd E. Jaworsky_____
Todd E. Jaworsky
Cody Goings
McElroy, Deutsch, Mulvaney & Carpenter, LLP
5600 South Quebec Street, Suite C100
Greenwood Village, Colorado 80111
Tel:  (303) 293-8800
Fax: (303) 839-0036
tjaworsky@mdmc-law.com
cgoings@mdmc-law.com
*Attorneys for Plaintiff, Preferred Contractors Insurance Company*

**Plaintiff's Address**:
27 North 27th Street, Suite 1900
Billings, Montana  59101